UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PETER Y. JENSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01808-SEB-DML |
| | ) | |
| KEYBANK N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO COMPEL ARBITRATION AND
TO STAY PROCEEDINGS PENDING ARBITRATION**

This matter is before us on Defendant KeyBank N.A.'s Motion to Compel Arbitration and Stay Proceedings Pending Arbitration. [Dkt. No. 13.] After due consideration and for the reasons that follow, we **GRANT** the Motion and **STAY** the proceedings pending arbitration.

**Facts and Background**

Plaintiff Peter Y. Jensen was the victim of bank fraud when his KeyBank checking account was hacked and $208,000 was transferred into an account controlled by the hacker. Contending that KeyBank's insufficient security measures are to blame for the hacker's access to his funds, Mr. Jensen seeks to recover the money he lost. KeyBank contends that Mr. Jensen's claims fall within the parties' arbitration agreement and asks us to compel Mr. Jensen to bring his claims in arbitration.

On November 16, 2011, Mr. Jensen and Judith Jensen opened a Key Privilege Select Checking Account. [Dkt. No. 15-1 (Key Privilege Select Checking Account Application

("Checking Account Application")).] The Checking Account Application does not contain an arbitration agreement. It does, however, provide as follows:

> My signature below authorizes KeyBank to establish a Key Privilege Select Checking Account as indicated in this application. I have reviewed the application and the Key Privilege Select Checking Account Agreement and agree to be bound by the terms and conditions of the Key Privilege Select Checking Account Agreement including debiting fees from my Key Privilege Select Checking Account, and the terms of all documents governing all aspects of my Key Privilege Select Checking Account relationship, *including the Deposit Account Agreement and Funds Availability Policy* and Disclosure Statement and Conditions for Electronic Funds Transfer.

[Checking Account Application at 2 (emphasis added).] The same day, Mr. Jensen executed a Deposit Receipt for Key Privilege Select Checking ("Deposit Receipt") which does not contain an arbitration agreement, but repeats that "[t]his *Account is governed by the provisions of the Deposit Account Agreement* established by the Bank at which you opened your Account." [*Id.* (emphasis added).]

The Deposit Account Agreement contains the agreement to arbitrate at issue, providing in relevant part as follows:

> **25. Arbitration Provision.** This Arbitration Provision sets forth the circumstances and procedures under which a Claim or Claims (as defined below) may be arbitrated instead of litigated in court. … **This Arbitration Provision will apply to your Account(s) unless you notify us in writing that you reject the Arbitration Provision within 60 days of opening your Account(s).**
>
> As used in this Arbitration Provision, the word "Claim" or "Claims" means any claim, dispute, or controversy between you and us arising from or relating to this Agreement or your Account(s), including, without limitation, the validity, enforceability, or scope of this Arbitration Provision or this Deposit Account Agreement. … The word "Claim" or "Claims" is to be given the broadest possible meaning, and includes, by way of example and without limitation, any claim that arises from or relates to … any Account

2

> subject to the terms of this Agreement … [and] any electronic funds transfer from or to any Account, ….
>
> …
>
> Any Claim shall be resolved, upon the election of you or us, by binding arbitration pursuant to this Arbitration Provision and the applicable rules of either the American Arbitration Association or J.A.M.S/Endispute in effect at the time the Claim is filed ….

[Deposit Account Agreement (eff. April 1, 2017) at Dkt. No. 15-3 at 10, ¶ 25; Deposit Account Agreement (eff. July 21, 2011), at Dkt. No. 15-1 at 8, ¶ 25 (emphasis in original) ("Arbitration Provision").] The Deposit Account Agreement is not signed by Mr. or Ms. Jensen.

One week after opening the Checking Account, Mr. and Ms. Jensen entered into a Key Equity Options Agreement [Dkt. No. 18-2 ("Options Agreement")] through which they could take an advance of up to $1,500,000 from KeyBank. The Options Agreement does not contain an arbitration agreement and, unlike the Checking Account Application and Deposit Receipt, it does not incorporate the Deposit Account Agreement. [*Id.*] Mr. Jensen did not reference the Options Agreement in his Complaint.

Mr. Jensen alleges that on or before August 27, 2015, his computer, email, and phone were compromised by an unidentified individual (the "Hacker"). The Hacker sent email instructions to KeyBank requesting a wire transfer in the amount of $208,000 from Mr. Jensen's Checking Account to an account controlled by the Hacker. According to Mr. Jensen, KeyBank's only attempt to verify the legitimacy of the email wire transfer request was to call Mr. Jensen's phone (which was controlled by the Hacker) and confirm the amount of the transfer; allegedly KeyBank did not request any additional information to

3

determine whether the Hacker was authorized to request transfer of the money. KeyBank completed the transfer and Mr. Jensen seeks to recover the $208,000 that KeyBank transferred to the Hacker.

**Discussion**

To successfully compel arbitration "a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580-81 (7th Cir. 2006) (citations omitted). Section 2 of the Federal Arbitration Act ("FAA") provides that "[a written] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[1] If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. If arbitration is ordered, the court must also stay the proceedings until such arbitration occurs. 9 U.S.C. § 3.

KeyBank seeks to compel arbitration of Mr. Jensen's claims on the grounds that: (1) the parties agreed to arbitrate per the Deposit Account Agreement which was

---

[1] According to the Deposit Account Agreement, claims that are governed by the Arbitration Provision are governed by Ohio law and the Federal Arbitration Act ("FAA"). [*See* Deposit Account Agreement ¶ 26 (Applicable Law); *see also* KeyBank Br. at Dkt. No. 14 at 5-6 and Jensen Resp. at Dkt. No. 18, at 5-6 (the parties concur).]

4

incorporated into the Checking Account Agreement executed by Mr. Jensen; (2) Mr. Jensen's claims fall within the scope of the arbitration agreement; and (3) Mr. Jensen has refused to arbitrate.[2] *See Zurich*, 466 F.3d at 580-81. KeyBank contends that Mr. Jensen's claim that KeyBank's inadequate security measures allowed the Hacker to fraudulently transfer his funds is within the scope of the broad Arbitration Provision.

Mr. Jensen rejoins that the parties did not agree to arbitrate, the Options Agreement and not the Deposit Account Agreement governs his claims, and the arbitration agreement is unconscionable. None of Mr. Jensen's arguments carries the day.

**1.   Agreement to Arbitrate**

Despite having signed two documents assenting to the terms of the Deposit Account Agreement, Mr. Jensen argues that because he did not sign the Deposit Account Agreement itself, and does not recall receiving the Deposit Account Agreement, he did not agree to arbitrate disputes with KeyBank. [Resp. at Dkt. No. 18, at 6.] This argument is a nonstarter. The Seventh Circuit has held that "[a]lthough § 3 of the FAA requires arbitration agreements to be written, it does not require them to be signed." *Tinder v. Pinkerton Security*, 305 F.3d 728, 736 (7th Cir. 2002). Accordingly, Mr. Jensen's contention that he cannot be bound by an arbitration agreement he did not sign has been squarely rejected by controlling authority.

Mr. Jensen's failure to recall whether he received the Deposit Account Agreement also does not relieve him of his agreement to arbitrate claims against KeyBank. The dispute

---

[2] No dispute exists that Mr. Jensen has refused to arbitrate.

in *Estate of Brewer v. Dowell & Jones*, decided by the Ohio Court of Appeals, is strikingly similar to the dispute in this case. 2002 WL 1454069 at *2 (Ohio App. Ct. 2002) (cited by *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758 (N.D. Ohio 2009)). The plaintiffs in *Brewer* argued that a financial institution, Fidelity, negligently permitted an employee to transfer plaintiffs' funds into his own account. Fidelity had a standard account application and customer agreement, both of which contained arbitration provisions. The *Brewer* plaintiffs argued that because they did not receive the customer agreement containing the arbitration clause and they failed to read the account application, they could not be bound by the arbitration requirements.

The *Brewer* court flatly rejected the plaintiffs' arguments, holding that "physical delivery of a contract is not essential to create a legally enforceable agreement. Where the parties intend to be bound by the contract, it is valid, even where a party later claims that he never received a copy of the agreement [or read it]." *Id.* at *2 (citations omitted). Although Mr. Jensen attempts to distinguish *Brewer* on the grounds that the plaintiffs in that case were bound by an arbitration agreement they signed *as well as* one they did not, the court's holding is not so limited. [*See* Resp. at Dkt. No. 18, at 8-9.] The *Brewer* court expressly rejected plaintiff's argument that "they did not have knowledge of and failed to receive the incorporated Customer Agreement containing the arbitration clause". *Brewer*, 2002 WL 1454069 at *2. Accepting as true Mr. Jensen's position that he did not remember

receiving (or even that he did not receive) a copy of the Deposit Account Agreement, Mr. Jensen is still bound by its terms.[3]

Mr. Jensen relies on distinguishable, inapplicable, and non-controlling authority, none of which supports a conclusion that he did not agree to binding arbitration. In *Delta Fuels, Inc. v. Consolidated Enviro. Servs., Inc.*, 2009 WL 975833 (Ohio. Ct. App. 2009), Delta's employee "express[ed] certainty that he had not been presented with the rate sheet" containing the arbitration provision. As a result, the Ohio Court of Appeals held that there was "no persuasive evidence in the record constituting adequate indicia of a meeting of the minds so as to constitute mutual assent." *Id.* at *3. The facts here are easily distinguishable, to wit, Mr. Jensen twice indicated his assent to the Deposit Account Agreement by executing the Checking Account Application and the Deposit Receipt.

The second case relied upon by Mr. Jensen, *Irby v. Strang*, involves a three-page contract for construction work between a homeowner and contractor. 2010 WL 219323 (Ohio Ct. App. Jan. 22, 2010). After the construction work began, plaintiff received an additional six-page document labeled "supplemental conditions" which included an arbitration provision. The homeowner did not sign the supplemental conditions. The Ohio Court of Appeals found no meeting of the minds with respect to the six-page document because the parties had agreed to the three-page contract, which did not contain an

---

[3] KeyBank has submitted uncontroverted evidence that it provided the Deposit Account Agreement to Mr. Jensen when he opened his Checking Account. [Second Declaration of David Peter Dunbar, Senior Relationship Manager at KeyBank, Dkt. No. 22, at ¶ 3 (KeyBank adhered to its policy and practice of providing copies of the Deposit Account Agreement as of November 16, 2011, the date on which Mr. Jensen opened his Checking Account).]

7

arbitration provision, and the work had started before the six-page document was sent to plaintiff. *Id.* at *2.[4]

Mr. Jensen makes no argument that even if he agreed to the Deposit Account Agreement, his claim would fall outside the scope of the claims to be compelled to arbitration. The term "claim", according to its definition, "is to be given the broadest possible meaning," which includes claims related to "electronic funds transfer from or to any account." [Arbitration Provision.] Mr. Jensen's claim plainly relates to an unauthorized electronic funds transfer executed by KeyBank which expressly falls within the scope of the Arbitration Provision.

For these reasons, we hold that Mr. Jensen agreed to the terms of the Deposit Account Agreement, including its Arbitration Provision, and that his claim is subject to compelled arbitration under that provision.

**2. Scope of the Arbitration Agreement**

Mr. Jensen would have us believe that his dispute with KeyBank is governed by the Options Agreement (which does not contain an arbitration agreement); however, the Options Agreement is wholly unrelated to the bank fraud at issue. Mr. Jensen's belated

---

[4] Mr. Jensen cannot avoid Ohio law with misplaced reliance on decisions applying law outside Ohio with facts distinguishable from the claims asserted herein. *See Hines v. Overstock.com, Inc.*, 380 Fed. Appx. 22 (2d Cir. 2010) (rejecting defendant's claim that the use of its website was sufficient to agree to an arbitration provision contained in the terms and conditions of the website), *I.C.E. Contractors, Inc. v. Martin & Cobey Constr. Co., Inc.*, 58 So. 3d 723 (Ala. 2010) (refusing to enforce an agreement that was never executed), and *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156 (3d Cir. 2009) (denying a motion to compel arbitration on the grounds that a shareholder did not explicitly consent to an arbitration agreement contained within the company's bylaws).

attempt to insert the Options Agreement into this litigation as a means of avoiding arbitration is a red herring, belied by Mr. Jensen's own allegations and the record documents. Mr. Jensen's *Checking Account* was hacked, not his equity line; indeed, Mr. Jensen makes no mention of the Options Agreement in his Complaint. [*See* Complaint ¶¶ 14, 19; Resp. at Dkt. No. 18, at 3 ("The fraudulent transfer was drawn from this line of credit.") (citing Jensen Decl. ¶ 6).] That Mr. Jensen funded his Checking Account with funds drawn from his line of credit is irrelevant.

### 3. Enforceability of the Arbitration Agreement

Mr. Jensen describes the Arbitration Provision opt-out requirements as "arduous and unfair", "clearly unreasonable," and "extraordinarily onerous," such that the agreement to arbitrate is "an unenforceable contract of adhesion." [Resp. at Dkt. No. 18, at 10-12.] Mr. Jensen has not challenged, or even mentioned, the provision delegating the authority to resolve any dispute relating to the validity, enforceability, or scope of the Arbitration Provision to the arbitrator.

The Supreme Court and Seventh Circuit instruct that unless a party challenges "the delegation provision specifically, we must treat it as valid under [the FAA], and must enforce it … leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010); *Johnson v. W. & So. Life Ins Co.*, 598 Fed. Appx. 454, 456 (7th Cir. 2015) ("The district court was therefore required to do as the Supreme Court directed in *Rent-A-Center*: treat the delegation provision as valid and enforce it, thereby letting the arbitrator decide [plaintiff's] challenges to the validity of the arbitration agreement.") (citing *Rent-A-Center*, 561 U.S.

9

at 72, 75-76). Pursuant to the parties' unchallenged delegation of questions of validity and enforceability to the arbitrator, we leave the resolution of these issues for the arbitrator's determination.

**4.      Attorneys' Fees**

On the grounds that the other party's position is without justification, each party requests an award of costs and attorneys' fees incurred litigating the issue of arbitration. KeyBank relies on a decision from this district penned by Judge Lawrence in which he sanctioned a plaintiff who refused to agree to arbitrate her claim after defendant provided the arbitration agreement, proof that plaintiff agreed to be bound, legal authority mandating enforcement of the agreement, and that arbitration applied to each of plaintiff's claims. *Hornbuckle v. Xerox Bus. Servs., LLC*, 2015 WL 631399, *5 (S.D. Ind. Feb. 13, 2015).

Mr. Jensen defends his refusal to arbitrate on the grounds that "it cannot be unreasonable or frivolous for a party to maintain that it is not bound by an agreement that it was never presented with, never executed, and [was] otherwise unaware of its terms." [Resp. at Dkt. No. 18, at 13.] As discussed above, Mr. Jensen's defense has been expressly rejected by the controlling authority in the Seventh Circuit, Ohio, and the Federal Arbitration Act. Mr. Jensen did not seek reversal or modification of the controlling law. *See Tinder*, 305 F.3d at 736; *Brewer*, 2002 WL 1454069 at *2 (explicated in detail above). We therefore find that sanctions against Mr. Jensen and in favor of KeyBank are appropriate.

## Conclusion

For the foregoing reasons, we **GRANT** the Motion to Compel Arbitration and **STAY** the proceedings pending arbitration. Within fourteen (14) days of the date of this Entry, KeyBank shall submit evidence regarding its actual fees and costs in compelling arbitration.

Date: 1/30/2018

*signature*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

James Matthew Denaro
CIPHER LAW
james@cipher.law

Kevin W. Kirsch
BAKER HOSTETLER
kkirsch@bakerlaw.com

James A. Slater
BAKER & HOSTETLER LLP
jslater@bakerlaw.com